**In re NATIONAL BICKFORD FOREMOST, INC., Debtor.**

**Bankruptcy No. 89–10983.**

United States Bankruptcy Court, D. Rhode Island.

June 26, 1990.

Edward J. Bertozzi, Jr., Regina Ramsey, Edwards & Angell, Providence, R.I., for Trustee.

Howard L. Feldman, Chisholm and Feldman, Providence, R.I., for Richard Emerson.

### DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on May 17, 1990, on the request of Richard Emerson, an employee of the debtor, for an order requiring the debtor to continue to provide his workers' compensation benefits, as well as medical insurance coverage. The Chapter 11 Trustee objects, on the ground that the movant's injury, which occurred on September 15, 1988, is outside the Code's priority claim period. *See* 11 U.S.C. §§ 507(a)(3) and (a)(4).

The undisputed facts are as follows:

On September 14, 1988, Emerson was injured in the course of his employment with the National Bickford Company and became entitled, and has since received $387 in weekly compensation, as well as complete medical coverage for his work

related injuries. On October 4, 1989, National Bickford filed a Chapter 11 petition, and thereafter a trustee was appointed on November 17, 1989. By letter dated March 9, 1990, the debtor's payroll/personnel representative, Patricia Mulcahey, advised Mr. Emerson that as of March 31, 1990, his health plan would terminate. In response to this notice, Emerson filed the instant motion.

■ As to Emerson's request that the Hartford Accident & Indemnity Co. be required to continue to pay workers' compensation benefits, no appearance or objection has been filed, and to the extent that it relates only to the Hartford, Emerson's motion is GRANTED [1].

The dispute over continued payment for medical coverage by the debtor is not as easily disposed of. In *In re Chateaugay Corporation*, 80 B.R. 279, 282 (S.D.N.Y. 1987), with which we agree, the District Court and the Bankruptcy Court both held that "prepetition workers' compensation claims [those that arose or accrued prior to the filing date] were general and unsecured …". Since Emerson's injury occurred on September 15, 1988, his claim "arose or accrued" on that date and must therefore be classified as a general and unsecured claim in this bankruptcy estate.

■ Emerson, however, argues that R.I. GEN. LAWS § 28–33–44 requires an employer to continue providing health insurance coverage to an employee receiving workers' compensation benefits for a two year period, or in this case until September 14, 1990. Without more, of course, Emerson is correct. However, in a bankruptcy context, we feel bound by the case cited by the trustee to the effect that "Congress

may determine the priority in payment to be given wages and other claims, irrespective of any state statute, and the extent to which said power is exercised becomes exclusive." *In re Penticoff*, 36 F.Supp. 1, 3 (D.C.Minn.1941) (other citations omitted). It is clear, therefore, under the Supremacy Clause of the U.S. Constitution, Article VI, Clause 2, that this Court is required to recognize and hold that the R.I. statute is preempted by Sections 507(a)(3) and (a)(4) of the Bankruptcy Code.

■ Section 507(a)(4) gives priority to "allowed unsecured claims for contributions to employee benefit plans" which arose 180 days before the date of the filing of the petition and subject to the $2,000 per employee limit provided in Section 507(a)(3). Although the question remains open as to whether this claim for health benefits accrues on a day by day basis, and therefore might entitle Emerson to the 180 day prefiling priority, or whether said claim is "set" as of September 15, 1988, thereby making him ineligible for a priority under Section 507(a)(4), we are not deciding that issue [2], because the debtor has continued to pay these benefits during the 180 days prefiling, and even for 5 months postpetition. Accordingly, we find that issue to be moot.

Upon consideration of the facts, and the law as we understand it, we rule that based upon the relevant provisions and principles of the Bankruptcy Code, *see*, i.e., §§ 502(g), 507(a)(3) and (a)(4); and *In re Robinson Truck Line, Inc.*, 47 B.R. 631 (Bankr.N.D. Miss.1985), Emerson is not entitled to an order continuing postpetition medical benefits, and that any additional claim he has shall be treated as a general, unsecured

---

1. The trustee objected to this motion to the extent that it requires *the debtor* to continue to pay said benefits. Since it does not appear that the debtor is presently being required to make such payments, there is no requirement to address the trustee's objection at this time.

2. With respect to the treatment of workers' compensation claims, the case law is sparse and varied. For instance, in *In re Chateaugay Corp., supra* at 281, n. 3, the court acknowledged that "[u]nlike other provisions of the order allowing payment of wages, salaries, medical and reim-

bursement claims, the court did not place an upper ceiling on the amount that could be paid for workers' compensation." Moreover, if we look to the form of calculation generally applied for vacation pay, namely, treating vacation pay as earned pro rata, just as wages are earned on a day to day basis, *see In re Columbia Packing Co.*, 35 B.R. 447, 449 (Bankr.D.Mass.1983) and cases cited therein, it would seem reasonable and equitable to apply the same formula to the treatment of Workers' Compensation claims, which includes the payment of health benefits.

claim. *See, In re Chateaugay Corp., supra.*

Enter Judgment accordingly.