**In re Alfred P. WEBSTER, Jr., Debtor.**

**Bankruptcy No. 89–10059.**

United States Bankruptcy Court,
D. Maine.

April 9, 1991.

Kim M. Vandermeulen, Goldman, Allen & O'Brian, Augusta, Me., for trustee.

Thomas R. Watson, McTeague, Higbee, Libner, Macadam, Case & Watson, Topsham, Me., for claimant Gary Gosselin.

Peter K. Baldacci, Bangor, Me., for debtor.

### MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

The Chapter 7 trustee has objected to the claim of Gary Gosselin ("Gosselin"), a former employee of Maine Built Homes, the debtor's pre-petition sole proprietorship. Gosselin filed a proof of claim asserting priority under 11 U.S.C. § 507(a)(3) for $28,325.34 in workers' compensation benefits due to him on account of a work-related injury he sustained on November 20, 1986. The trustee does not contest the debtor's obligation to Mr. Gosselin. Only the claimed priority is at issue.

For the reasons set forth below, the court concludes that Gosselin's claims for unpaid workers' compensation benefits accrued before Webster's bankruptcy do not come within the Code's wage priority.

### FACTS

The material facts are uncontested. In the course of his employment, Gosselin sustained a disabling injury to his lower back on November 20, 1986. The State of Maine's Workers' Compensation Commis-

---

sion entered its decree awarding Gosselin workers' compensation benefits on May 25, 1988. On September 21, 1988, the Maine Superior Court for Penobscot County issued its *pro forma* order requiring Webster to pay all workers' compensation benefits due to Gosselin under the decree. By the date of the bankruptcy filing, weekly compensation, interest and medical benefits due to Gosselin totalled $28,325.34. Gosselin filed a timely proof of claim alleging priority status for the full amount.

## DISCUSSION

Gosselin posits that the claim is entitled to priority under § 507(a)(3) because workers' compensation entitlements such as his include a wage replacement component for workers disabled as a consequence of occupational injury. *See* 39 M.R.S.A. § 51, *et seq.* Gosselin cites 39 M.R.S.A. § 69 in support of his claim to priority treatment. In that enactment, Maine's legislature declared:

A claim for compensation under this Act, and any compensation payment scheme therefor, shall be entitled to a preference over the unsecured debts of the employer to the same amount as the wages of labor are preferred by the laws of this State. Nothing herein shall be construed as impairing any lien which the employee may have acquired.

The trustee counters that the Bankruptcy Code expressly restricts § 507(a)(3)'s priority to "wages, salaries or commissions, including vacation, severance, and sick leave pay" earned by an individual within 90 days before the bankruptcy filing or the cessation of the debtor's business. He argues that the scope of the priority is a matter of federal law, delimited by the statute's plain language.

To begin, Gosselin cannot seriously assert that the priority extends beyond the statute's express $2,000.00 cap or that it operates upon benefits owing to him for a period more distant than 90 days before the bankruptcy filing. That much is plain.

In determining whether any part of Gosselin's claim is entitled to priority, the court observes that:

The task of resolving the dispute over the meaning of [the Code] begins where all such inquiries must begin: with the language of the statute itself. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685 [105 S.Ct. 2297, 2301, 85 L.Ed.2d 692] (1985). In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).

*United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

In annunciating the § 507(a)(3) priority, Congress employed precise language. It did not extend the priority's reach to workers' compensation benefits. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of the statute will produce a result demonstrably at odds with the intention of its drafters.'" *Id.,* 489 U.S. at 242, 109 S.Ct. at 1031 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). To give the statute its "natural reading" here does not render its scheme incoherent or inconsistent. *See, Id.,* 489 U.S. at 240–241, 109 S.Ct. at 1030. There is "no reason to suspect" that Congress meant to create any broader category of priority than that which the language of the statute establishes. *Id.,* 489 U.S. at 246, 109 S.Ct. at 1033.[1]

Were Maine to attempt to broaden the priority by statute, the effort would run afoul the Supremacy Clause. Congress may, and has, determined the extent of the

---

1. To the extent it is of interpretive assistance, pre-Code practice was consistent with the plain meaning given § 507(a)(3) today. *See, e.g., Lane v. Industrial Com'r of State of New York,* 54 F.2d 338 (2d Cir.1931), *cert. denied,* 286 U.S. 543, 52 S.Ct. 496, 76 L.Ed. 1280 (1932) (compensation awards not fully paid before employers bankruptcy are not "wages" or "debts" entitled to priority within Bankruptcy Act); and *In re Raiken,* 33 F.Supp. 88 (D.N.J.1940) (claim for occupational injuries cannot be classified as earned wages entitled to priority).

wage priority. Having done so, its determination is exclusive, notwithstanding the content of state enactments with which it may collide. U.S. Const. art. I, § 8, cl. 4; art. VI, cl. 2. *See In re National Bickford Foremost, Inc.,* 116 B.R. 351, 352 (Bankr. D.R.I.1990); *In re Redford Roofing Co., Inc.,* 54 B.R. 254 (Bankr.N.D.Ill.1985). *See also Lane v. Industrial Com'r of State of New York, supra,* 54 F.2d at 338, 340 (2d Cir.1931). The state law provision relied upon by Gosselin, however, does no more than establish that workers' compensation benefits are treated at par with wage claims, in preference to other unsecured employer debt, as a matter of state law. Thus, in the bankruptcy context, 39 M.R. S.A. § 69 is of no moment.

## CONCLUSION

For the reasons set forth above, the trustee's objection to the priority claim of Gary Gosselin is sustained. The claim is allowed, in full, as a general, unsecured claim.