In the Matter of ARROW CARRIER CORPORATION, a New Jersey corporation, Holmes Transportation Corporation, a Maine corporation, Tri–State Transportation Co., a New Jersey corporation, Berman's Motor Express, Inc., a New York corporation, and Arrow Carrier Corporation, a Delaware corporation, Debtors.

Bankruptcy Nos. 89–20602–20606.

United States Bankruptcy Court,
D. New Jersey.

April 13, 1993.

---

Mary Ann Walker Collins, P.C., Bridgewater, NJ, Peter M. Lencsis, New York City, by Mary Ann Walker Collins, for Greater New York Mut. Ins. Co., and Ins. Co. of Greater New York.

Cole, Schotz, Bernstein, Meisel & Forman, Hackensack, NJ by Gerald H. Gline, and Laurence R. Nichter, for Hugh M. Leonard, Trustee.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

Greater New York Mutual Insurance Company and Insurance Company of Greater New York have brought the within motion for an order directing the chapter 7 trustee to make payment of a certain portion of their claims for unpaid workers' compensation premiums due from the debtor. The movants seek payment of accrued post-petition workers' compensation premiums and administrative priority status for a certain portion of their pre-petition claims. As this matter affects the administration and liquidation of the assets of the bankruptcy estate, the issues raised by this contested matter are core proceedings as defined by Congress in 28 U.S.C. § 157 *et seq.* The within opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FINDINGS OF FACT

1. The debtors, Arrow Carrier Corporation, a New Jersey corporation, Holmes Transportation Corporation, a Maine corporation, Tri–State Transportation Company, a New Jersey corporation, Berman's Motor Express, Inc., a New York corporation, and Arrow Carrier Corporation, a Delaware corporation (hereinafter the "debtors"), filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code on December 15, 1989.

2. The debtors were in the business of interstate trucking and operated approximately 23 trucking terminals throughout the northeast United States.

3. On March 13, 1990, a chapter 11 trustee was appointed. The debtors' case was converted to a chapter 7 liquidation on October 4, 1991 and a chapter 7 trustee was appointed.

4. The movants, Greater New York Mutual Insurance Company and Insurance Company of Greater New York (hereinafter the "insurance companies"), are in the insurance business.

5. For the time period January 1, 1989 through March 15, 1990, the insurance companies provided workers' compensation insurance coverage and benefits to the debtors.

6. The insurance companies filed amended proofs of claim in the within bankruptcy in the amount of $827,532.00 representing accrued but unpaid premiums

for workers' compensation insurance coverage provided to the debtors both pre-petition and post-petition.

7. Thereafter, on August 31, 1992, the insurance companies brought the within motion for an order directing the chapter 7 trustee to make payment of a certain portion of their claims as administrative expenses. In particular, the insurance companies sought priority payment of $322,-305.00, which was the portion of pre-petition insurance premiums representing coverage for the states of New York, Massachusetts and Pennsylvania.[1] The insurance companies also sought payment of $128,-957.00 for their post-petition claim, which represented premiums due for workers' compensation coverage from the date of filing of the petition through March 15, 1990. This coverage applied to all employees of the debtors in the states of Connecticut, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania and Vermont.[2]

8. The trustee filed opposition to the insurance companies' requests for payment, a hearing was held, and decision was reserved.

## DISCUSSION

█ It is argued that two statutory provisions of the United States Code are in conflict in the case at bar: 11 U.S.C. § 507(a) of the United States Bankruptcy Code and 15 U.S.C. § 1011 *et seq.* of the McCarran–Ferguson Act. Specifically, the insurance companies believe that they are entitled to priority treatment for portions of their pre-petition claims for unpaid workers' compensation premiums. In support of their contention, the insurance companies argue that the McCarran–Ferguson Act was enacted by the United States Congress in order to ensure that the regulation of the business of insurance be solely with-

in the discretion of the states. The insurance regulatory statutes enacted in Massachusetts, New York, and Pennsylvania provide, among other things, that unpaid workers' compensation premiums are to be treated as priority claims in any bankruptcy proceeding.[3] Accordingly, the insurance companies argue that the portion of unpaid workers' compensation premiums representing the debtors' business in Massachusetts, New York, and Pennsylvania must be paid as administrative expenses or preferred unsecured claims and not as mere general unsecured claims.

At the outset, this court notes that the issue presently before it appears to be one of first impression since, although this court has examined numerous court decisions interpreting the McCarran–Ferguson Act, there does not appear to be any decision dealing specifically with the conflict posed here. Specifically, the issue presented is whether individual state statutes that provide for preferential treatment of unpaid workers' compensation premiums in bankruptcy proceedings, and which were enacted pursuant to a federal law allowing states to regulate the business of insurance, can operate to alter the priority scheme expressly set forth in section 507 of the United States Bankruptcy Code. Resolution of this issue requires an examination of the scope and extent of the McCarran–Ferguson Act as it relates to state regulation of the business of insurance.

█ For our purposes, the intent of Congress in enacting the McCarran–Ferguson Act is clearly found in both the text of the statute and the law's legislative history. Section 1012(b) states:

No Act of Congress shall be construed to invalidate, impair, or supersede any law *enacted by any State for the purpose of regulating the business of insurance,* or

---

**1.** This amount is accepted for purposes of the within motion. However, the court makes no determination at this time as to the exact amount of the insurance companies' pre-petition claim.

**2.** The court notes that, at the hearing on the within matter, counsel for both sides instructed the court that the issue as to payment of post-

petition insurance premiums raised by the insurance companies' motion would be resolved by consent order as soon as an agreeable premium amount could be ascertained.

**3.** The exact priority given to such claims varies from state to state, but the intent to make those claims preferred is clear.

which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance ...

15 U.S.C. § 1012(b) (emphasis added). The legislative history also provides:

The purpose of the bill is twofold: (1) to declare that the continued regulation and taxation by the several States of the business of insurance is in the public interest; and (2) to assure a more adequate regulation of this business in the States by suspending the application of the Sherman and Clayton Acts ...

H.R.Rep. No 143, 79th Cong., 1st Sess. 2–3, *reprinted* in 1945 U.S.Code Cong. & Admin.News 670, 671–72. *Accord* S.Rep. no. 20, 79th Cong., 1st Sess. 1–2 (1945). Given this specific legislative intent, both Congress and the courts have declared that the McCarran–Ferguson Act was not intended to open new areas of regulatory discretion to the states, but rather to provide that states alone may regulate the business of insurance. *See State of Idaho v. United States*, 858 F.2d 445, 450 (9th Cir.1988), *cert. denied*, 490 U.S. 1065, 109 S.Ct. 2063, 104 L.Ed.2d 628 (1989). In this regard, it has been the function of the courts, particularly the Supreme Court, to interpret and define the exact nature of the phrase "business of insurance" as it applies to particular state regulatory schemes.

The United States Supreme Court has expressly defined the scope of the McCarran–Ferguson Act as it relates to the "business of insurance" in several key decisions, among the most important and first being *Securities and Exchange Comm'n v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). In the *National Securities* case, the Supreme Court found that:

The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and

enforcement—these were the core of the "business of insurance." Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, *it is clear where the focus was—it was on the relationship between the insurance company and the policy holder.* Statutes aimed at protecting or regulating this relationship, directly or indirectly are laws regulating the "business of insurance."

393 U.S. at 460, 89 S.Ct. at 568–69 (emphasis added).[4]

With all this in mind, the court agrees with the insurance companies that the McCarran–Ferguson Act was enacted to give regulatory authority over the business of insurance back to the individual states. However, this court does not agree that the individual state statutes presented here entitle the insurance companies to priority claims in the within bankruptcy proceeding. Specifically applying the reasoning of *National Securities* to the individual state statutes presented, this court finds that the particular sections of those statutes dealing with the priority of unpaid workers' compensation premiums are clearly outside the scope of the McCarran–Ferguson Act. The state statutes do not regulate the insurance relationship, but rather the relationships between debtor and creditor and creditor vis-a-vis other creditors. Such provisions are not insurance regulation but debtor-creditor regulation, and, as the Supreme Court has repeatedly recognized, the United States Bankruptcy Code and the bankruptcy courts in general were intended by Congress to exercise original jurisdiction over bankrupt individuals and corporations. *See Pepper v. Litton*, 308 U.S. 295,

---

**4.** After the *National Securities* decision, the Court appeared to refine its initial characterization of the "business of insurance." *See Group Life & Health Ins. Co. v. Royal Drug Co., Inc.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979); *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). In particular, in *Royal Drug,* the Court announced a three part test for determining

whether a regulated activity was in the "business of insurance." *See Pireno,* 458 U.S. at 129–31, 102 S.Ct. at 3009. However, these later cases are merely a further elaboration of the initial test noted by the Court in *National Securities. See State of Idaho,* 858 F.2d at 453. For present purposes, the basic *National Securities* test is most helpful in guiding this court's decision.

303–05, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). Thus, it is the bankruptcy code, not state statutes enacted under the auspices of the McCarran–Ferguson Act, that determines the type and priority of claims in a bankruptcy proceeding.

■ With respect to the type and priority of claims in bankruptcy proceedings, the bankruptcy code is both comprehensive and clear. *See* 11 U.S.C. § 507. In general, there are three types of claims: secured claims, administrative expenses, and unsecured claims. Section 507 is the expression of Congress' intent to specify the kinds of administrative expenses and unsecured claims that are entitled to priority in distribution and the order of that priority. Section 507 specifically provides for preference to a variety of unsecured claims including wages, employee benefit plan contributions, and certain taxes. 11 U.S.C. § 507(a)(1)–(7). Thus, if a particular type of unsecured claim is not specifically listed in section 507, then Congress had no intention of granting such a claim priority in bankruptcy distributions. As the Supreme Court has stated, the plain meaning of the code should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *See United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989), *quoting, Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). A reading of section 507 reveals that Congress has made no such provision for preferential payment of pre-petition workers' compensation premiums. Accordingly, it was not Congress' intent to grant unpaid pre-petition workers' compensation premiums administrative priority. Rather, such claims should be treated as general unsecured claims payable in the ordinary course with the other unsecured creditors of the estate.

In making its decision, the court recognizes the numerous policy arguments put forth by the insurance companies in their effort to show that the unique nature of workers' compensation premiums entitles them to preferential treatment. Most notably, the insurance companies argue that preferential payment of their premiums is necessary to ensure the financial viability of the workers' compensation insurance industry. This argument, however, could easily be made by any creditor. In today's complex business marketplace, every business might necessarily have to rely on the prompt payment of bills to ensure its own financial stability. Yet, the very fact that the bankruptcy code exists is testament to the fact that businesses will sometimes not be in the position to satisfy their debts. Accordingly, the price to be paid in the marketplace for the type of service offered should be a reflection of the realities of doing business in a sometimes unpredictable business environment—where bankruptcy is a definite possibility.

The United States Constitution grants Congress the sole power to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. Art. I, § 8, cl. 4. Congress, acting pursuant to this sole grant of authority, has exercised that sole grant of power by virtue of its enactment of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* One of the purposes of the bankruptcy code is to ensure that a debtor's assets are equitably shared among all creditors similarly situated. In the case at bar, the state statutes attempt to elevate the claims of insurance companies at the expense of other creditors and in direct contradiction to the intended orderly payment process of the bankruptcy code.[5] Thus, while the court recognizes the apparent purpose behind these specific state statutes, this court, nonetheless, still finds that the state statutes at issue here do not regulate the "business of insurance" and are outside the scope of the McCarran–Ferguson Act.

---

5. Congress, in passing the bankruptcy code, has structured a nationwide and uniform manner for processing creditors' claims. If claims for unpaid workers' compensation insurance are to be singled out for particular relief, that relief must be granted by Congress and not by the individual states.

Therefore, those particular sections of the Massachusetts, New York and Pennsylvania statutes dealing with the priority of workers' compensation premiums are superseded by the United States Bankruptcy Code. *See* U.S. Const., Art. VI., cl. 2.

## CONCLUSION

For all the foregoing reasons, the motion of the movants, Greater New York Mutual Insurance Company and Insurance Company of Greater New York for an order seeking to have their claims for pre-petition workers' compensation premiums treated as preferred claims is denied. The insurance companies' claims are general unsecured claims and shall be treated accordingly in the within bankruptcy proceeding.