In re LULL CORPORATION, Erickson
Corporation, Debtors.

Bankruptcy No. 4–92–1680.

United States Bankruptcy Court,
D. Minnesota.

Dec. 30, 1993.

William Fisher, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, MN, for trustee.

Steven W. Meyer, Oppenheiemer, Wolff & Donnelly, Minneapolis, MN, for Minnesota Self–Insurers' Sec. Fund.

## MEMORANDUM ORDER

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the 9th day of September, 1993, on the trustee's objection to Minnesota Self–Insurers' Security Fund's ("MSISF") proof of claim. Appearances were as follows: William Fisher for the trustee; and Steven Meyer for MSISF.

## FACTS

1. MSISF is a nonprofit corporation created by Chapter 79A of the Minnesota Statutes ("Chapter 79A"), which provides for workers' compensation self-insurance. The purpose of MSISF is to continue payment of workers' compensation benefits delayed due to the insolvency of a private self-insurer. Minn.Stat. § 79A.08 (1992).

2. Pursuant to Chapter 79A, upon an order of the Minnesota Commissioner of Commerce ("Commissioner"), MSISF "shall assume the workers' compensation obligations of an insolvent private insurer." Minn.Stat. § 79A.10, subd. 1 (1992). Chapter 79A also provides that MSISF "shall have the right and obligation to obtain reimbursement from an insolvent private insurer up to the amount of the private self-insurer's workers' compensation obligations paid and assumed by the security fund, including reasonable administrative and legal costs." Minn.Stat. § 79A.11, subd. 1 (1992). To carry out its obligation, MSISF may assess each of its self-insured members. Minn.Stat. § 79A.12, subd. 2 (1992).

3. In order to qualify as a self-insurer, an employer must post security for its workers' compensation liability to cover payments if the employer defaults or becomes insolvent. Minn.Stat. § 79A.04, subd. 3 (1992).

4. Lull Corporation ("Debtor") was a self-insured employer. In accordance with Chapter 79A, Debtor secured its potential workers' compensation obligations by posting a letter of credit in the amount of $523,000 ("Letter of Credit").

5. Debtor closed its Minnesota manufacturing operations in the spring of 1991. On March 3, 1992, Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Soon thereafter, MSISF assumed Debtor's workers' compensation obligations. By the time of the hearing on this matter, MSISF had drawn down on the Letter of Credit in the approximate amount of $523,000. By now, it is assumed, MSISF has exceeded the amount of the Letter of Credit.

6. MSISF filed its initial proof of claim on July 16, 1992. On November 23, 1992, MSISF filed its second amended proof of claim ("claim") in the amount of $672,058.27. MSISF asserts the following basis for its claim: $72,485 in workers' compensation obligations already paid, along with the resulting expenses; $1,113,480 in estimated future obligations and expenses; and $9,093.27 in assessments, minus $523,000 from the Letter of Credit. The portion of the claim representing the assessments is not in dispute. The amount of the claim represents paid and estimated benefits and costs in excess of $523,000.

7. The claim is in response to claims made to MSISF by the Debtor's employees who are entitled to workers' compensation benefits ("employees"). While the employ-

ees' injuries arose pre-petition, their claims have been and are to be paid post-petition.

8. MSISF indicates the amount of the claim is subject to change. According to MSISF, as of May 31, 1993, it had paid $409,776 of Debtor's workers' compensation obligations, and MSISF expected additional obligations of $785,282. By September, 1993, MSISF was close to having drawn down the $523,000 Letter of Credit, further reducing the amount of the claim for future payments and expenses. Currently, it is assumed MSISF has been required to make payments out of pocket since having exceeded the amount of the Letter of Credit.

9. The trustee now objects to the claim for payments made and to be made and costs incurred and to be incurred, asserting that it is disallowed as a contingent claim pursuant to § 502(e)(1)(B). In the event it is allowed, the trustee argues it is a general unsecured claim.

10. MSISF contends that the claim is not disallowed under § 502(e)(1)(B) but rather should be allowed as either a wage priority claim, an administrative expense, or a general unsecured claim.

11. The parties have stipulated to submit the legal issues prior to the resolution of the factual issues. Accordingly, the sole issue is whether MSISF's claim for benefits and expenses in excess of $523,000 is allowed and, if so, the status of the claim.

### DISCUSSION

MSISF bifurcates its claim into two components: the estimated workers' compensation obligations MSISF will be liable for; and the estimated costs MSISF will incur in administering all the Debtor's uninsured workers' compensation obligations. The claim does not consist of any claims paid by MSISF up to the Letter of Credit amount. The two components of the claim will be addressed separately.

### I. Allowance of the Claim

The Bankruptcy Code provides that a creditor's claim shall be allowed except that:

[T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—

\*   \*   \*   \*   \*   \*

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

11 U.S.C. § 502(e)(1)(B).

This provision reflects two Congressional policies. First, it allows for the expeditious resolution of issues so as not to burden the estate by claims which have not come to fruition. *In re A & H, Inc.*, 122 B.R. 84, 85 (Bankr.W.D.Wis.1990), quoting *Greatamerican Fed. Sav. & Loan Ass'n v. Adcock Excavating, Inc.*, No. 89 C 3794, 1990 WL 51219, at *3 (N.D.Ill. Apr. 17, 1990). Second, it "prevents competition between a creditor and his guarantor for the limited proceeds of the estate." H.R.Rep. No. 595, 95th Cong., 1st Sess. 354 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 65 (1978); U.S.Code Cong. & Admin.News 1978, pp. 5787, 5851, 6310. Therefore, it seeks to preclude redundant recoveries on identical claims, or "double-dipping." *Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.)*, 993 F.2d 915, 923 (1st Cir.1993).

■ Section 502(e)(1)(B) requires that a proof of claim be disallowed when the following three elements are present: (1) the claim is one for reimbursement or contribution; (2) the entity asserting the claim is liable with the debtor on the claim of the creditor; and (3) the claim is contingent at the time of its allowance or disallowance. *Al Tech Specialty Steel Corp. v. Allegheny Int'l, Inc. (In re Allegheny Int'l, Inc.)*, 126 B.R. 919, 921 (W.D.Pa.1991); *In re Provincetown–Boston Airlines, Inc.*, 72 B.R. 307, 309 (Bankr. M.D.Fla.1987).

#### A. Estimated workers' compensation obligations

##### 1. Claim for reimbursement

The claim is clearly for reimbursement. MSISF concedes as much. The fact that reimbursement by Debtor to MSISF for amounts MSISF has paid is mandated by

statute does not affect the underlying nature of the claim as being one for reimbursement.

### 2. *Liable with the debtor on the claim of a creditor*

■ The Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). In the present case, "the claim" is the workers' compensation benefits that the employees are legally entitled to pursuant to Minnesota's workers' compensation laws. *See* Minn.Stat. § 176.021 (1992).

The Code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). Here, the creditors are the employees who were injured pre-petition and are entitled to benefits under state law.

The phrase "is liable with the debtor on ... the claim of the creditor" is "broad enough to encompass any type of liability shared with the debtor, whatever its basis." *In re Baldwin–United Corp.*, 55 B.R. 885, 890 (Bankr.S.D.Ohio 1985). The co-liability does not need to be judicially established. *In re Amatex Corp.*, 110 B.R. 168, 168 (Bankr.E.D.Pa.1990). Nor must the liability be contractually established. *Baldwin–United*, 55 B.R. at 890. Under this broad standard, the liability can be statutory.

Therefore, it must be determined whether *both* Debtor and MSISF are legally obligated to pay the employees for workers' compensation benefits. The resolution of this issue hinges on the interpretation of Chapter 79A, of which there are no reported cases.

MSISF is clearly liable to the employees. Pursuant to Chapter 79A, MSISF is required to assume the workers' compensation obligations of an insolvent private self-insurer. Minn.Stat. § 79A.10, subd. 1 (1992). Having done this, MSISF has the right to immediate possession of the $523,000 Letter of Credit.

*See* Minn.Stat. § 79A.04, subd. 10 (1992). Payments are to be made first from the Letter of Credit and then, after the security has been exhausted, from the members' assessment account which is entitled to reimbursement. Minn.Stat. § 79A.04, subd. 11 (1992). Finally, Chapter 79A provides that "the payment of benefits by [MSISF] from security deposit proceeds shall release and discharge ... the self-insured employer from liability to fulfill obligations to provide those same benefits as compensation, but does not release any person or entity from any liability to the security fund for full reimbursement." Minn.Stat. § 79A.04, subd. 13 (1992).

MSISF asserts, however, that it is not liable with the Debtor because, under Chapter 79A, the debtor is no longer liable to the employees. I disagree. Before Debtor became insolvent it was clearly liable for workers' compensation benefits. Chapter 79A does not change this. All Chapter 79A does is provide a collateral source of payment and a statutorily mandated right in MSISF for reimbursement. It does not absolve Debtor of its liability to provide benefits to the employees. Nor does it mandate that MSISF is exclusively liable to the employees. The statute simply facilitates the payment of claims to employees when the employer becomes insolvent. *See* Minn.Stat. § 79A.08 (1992).

It is true that by statute Debtor is not liable with MSISF after MSISF has made payment on the employee's claims. The issue, however, is not liability *after* such payment. Rather, it is the liability *before* payment. It is clear under the statutory scheme that Debtor was and still is primarily liable to the employees for future workers' compensation benefits and that MSISF is secondarily liable. This is similar to a principal—guarantor relationship, and is the exact situation § 502(e)(1)(B) governs.

Nonetheless, MSISF contends that it is not liable with the Debtor since no employee has filed a proof of claim.[1] Chapter 79A does

---

1. In support, MSISF cites *In re A & H, Inc.*, 122 B.R. 84 (Bankr.W.D.Wis.1990), which stated that "had [the codebtor] not filed proofs of claims ... the debtor might no longer have been liable."

*Id.* at 86. The court in *A & H* was merely speculating, as is MSISF. In the present case, there is the possibility that an employee may still file a proof of claim. For example, an employee

not preclude an employee from filing a proof of claim in this proceeding for unpaid workers' compensation benefits. And, section 502(e) does not require that a proof of claim be filed in the proceeding to be liable with the debtor. Application of this section "is not premised on the actual filing of multiple claims but, rather, on the existence of such claims." *In re Cottonwood Canyon Land Co.,* 146 B.R. 992, 997 (Bankr.D.Colo.1992). *See also Hemingway Transport,* 993 F.2d at 926. Here, the employees have claims both against Debtor and MSISF and employees can file claims in this case against the debtor.

The Code specifically disallows a claim for reimbursement of an entity that is liable with the debtor "to the extent that ... [it] is contingent as of the time of allowance or disallowance." 11 U.S.C. § 502(e)(1)(B). Obviously the contingency is measured at the time of allowance. Admittedly, this stringent analysis may have a harsh effect on a co-liable party such as MSISF. Section 502(e)(2) mitigates the effects of § 502(e)(1)(B) by allowing a co-liable party to "fix" its contingent claim by satisfying the debt due to the creditor. This then leaves the co-liable party as the sole holder of the claim against the estate. *See* Lawrence D. King, *Collier on Bankruptcy* ¶ 502.05, at 502–87–90 (15th ed. 1993) [hereinafter *Collier on Bankruptcy* ].

MSISF points to the fact that it can foresee making future payments to the employees in accordance with Chapter 79A. Under the general workers' compensation laws, however, MSISF will not make such payments until medical services are rendered and other payments become due. Until then, MSISF maintains it is impossible to estimate what the payments it will need to make will be, and thus even more difficult to "fix" the claim. Because it cannot take advantage of § 502(e)(2) and "fix" its claim, MSISF argues

its claim should be allowed on an estimated basis.

Unfortunately for MSISF, this predicament aptly illustrates the speculative contingent nature of the claim and why it should be disallowed under § 502(e). The Code provides no options other than satisfaction of the debt for the co-liable party to protect its claim. It makes no exceptions for a situation, such as this, where the workers' compensation law makes it virtually impossible to "fix" the amount of the its claim by immediate payment on the debt.

MSISF also argues that the Debtor's estate may get a windfall should its claim be disallowed and the employees not file proofs of claims. Courts have recognized this possibility but have refused to allow a claim on this basis. *See, e.g., Cottonwood Canyon,* 146 B.R. at 997; *In re Drexel Burnham Lambert Group, Inc.,* 148 B.R. 982, 987 (Bankr.S.D.N.Y.1992) (refusing to change the standard under § 502(e) for unique circumstances).

### 3. *Contingent claim*

The trustee asserts that the claim is contingent, thus satisfying the third factor under § 502(e)(1)(B). MSISF disagrees, urging the court to differentiate between a contingent and an unliquidated claim. According to MSISF, a contingent claim is a claim in which the legal obligations are uncertain. Unliquidated claims, by contrast, are those in which legal liability is established but the amount has not been fixed. According to MSISF, it is required to pay the liabilities as they become due. Therefore, maintains MSISF, the claim is unliquidated and should be allowed and estimated.

■ The determination of whether a claim is contingent is made at the time of allowance or disallowance of the claim, which courts

may demonstrate "excusable neglect" under both Bankruptcy Rule 9006(b)(1) and the recent United States Supreme Court decision *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

In *Hemingway Transport,* the First Circuit considered this precise issue. The trustee asserted that the creditor might have been able to extend the period to file a proof of claim under Rule

9006(b)(1). The court rejected this argument on the basis that Rule 3002(c) precluded a creditor of a chapter 7 proceeding from filing a timely proof of claim against the debtor's estate. *Hemingway Transport,* 993 F.2d at 926 n. 10. Here, Debtor filed a chapter 11 petition. Rule 3003(c)(3), unlike Rule 3002, provides that "the court shall fix and for cause shown may extend the time which proofs of claim or interest may be filed." Bankruptcy Rule 3003(c)(3).

have established as the date of the ruling. *Drexel Burnham,* 148 B.R. at 986; *Collier on Bankruptcy,* at ¶ 502.05. A contingent claim is "a claim which has not yet accrued and which is dependant upon some future event that may never happen." *Provincetown–Boston Airlines,* 72 B.R. at 310. Therefore, the contingency relates to both payment *and* liability.

In the present case, MSISF's claim is clearly contingent. Contrary to MSISF's contentions, it is uncertain that MSISF will ever be liable on future workers' compensation claims. The obligations are dependant upon the health and the actions of the employees. It is a possibility, however remote, that all the injured workers will be cured and return to work. Likewise, injured workers ordinarily entitled to benefits may choose not to file a claim with MSISF. In essence, MSISF cannot concretely establish that it will be obligated to pay the future benefits. Until the future claims become present claims they are contingent.

In conclusion, MSISF's claim for as yet unpaid future estimated workers' compensation obligations is disallowed under § 502(e)(1)(B). To the extent, however, that MSISF has paid a claim on the date of this ruling, it shall be allowed. *See In re Friendship Child Dev. Ctr., Inc.,* No. 6–90–502, 1992 WL 566286 (Bankr.D.Minn. June 4, 1992) (allowing a claim to the extent the guarantor actually paid the debt).

### B. *Estimated costs in administering the obligations*

■ The next issue is whether MSISF's administrative and legal costs incurred in administering the workers' compensation benefits ("costs") are disallowed under § 502(e)(1)(B). Chapter 79A provides that MSISF has "the right and obligation to obtain reimbursement . . . including reasonable administrative and legal costs." Minn.Stat. § 79A.01, subd. 2 (1992). To be disallowed, the claim must satisfy the three-part test previously set forth.

The portion of the claim seeking costs is for reimbursement. Further, this portion of the claim is contingent because MSISF will not administer the obligations absent a claim

from an employee. MSISF, however, is not liable with the Debtor for the costs. Simply put, Debtor owes these expenses to MSISF; Debtor and MSISF do not owe the costs to the employees. There is no risk of double payment. Therefore, the portion of MSISF's claim that relates to administrative and legal costs is allowed under § 502(e)(1)(B), and shall be estimated pursuant to § 502(c).

## II. *Status of Allowed Claim*

### A. *Compensation benefits accrued pre-petition as a priority wage claim pursuant to § 507(a)(3)*

MSISF asserts that workers' compensation benefits that accrued pre-petition constitute a priority wage claim under § 507(a)(3). The Code provides a third priority for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" if it is earned within 90 days prior to the filing, but only to the extent of $2,000 for each employee. 11 U.S.C. § 507(a)(3). MSISF asserts that some of the payments it has made are in lieu of wages or sick leave that employees would have been entitled to 90 days prior to filing. MSISF contends that these payments are virtually indistinguishable from "sick leave pay" and wages and thus deserve priority.

MSISF cites no authority for its position. Neither the wording of the Code nor the purpose for which third priority status is granted supports its argument.

■ Section 507(a)(3) covers only "wages, salaries, or commissions, including vacation, severance and sick leave pay." Priority statutes are generally narrowly construed. "In annunciating the § 507(a)(3) priority, Congress employed precise language. It did not extend the priority's reach to workers' compensation benefits." *In re Webster,* 126 B.R. 4, 5 (Bankr.D.Me.1991).

■ Further, under § 507(a)(3), MSISF is not an employee and has not been transferred any claims by employees. Only claims for wages *directly due* employees may be asserted under § 507(a)(3). *See United States v. Embassy Restaurant, Inc.,* 359 U.S. 29, 32, 79 S.Ct. 554, 556, 3 L.Ed.2d 601

(1959); *In re Grant Industries, Inc.,* 133 B.R. 514, 515 (Bankr.W.D.Mo.1991) (the Bankruptcy Court only allowed a claim of priority where there was a real status of employee and employer between the claimant and the debtor).

■ MSISF makes its claim on the basis of Minn.Stat. § 79A.07, subd. 1, which allows it to step into the shoes of employees for purposes of priority. Chapter 79A is preempted by § 507(a)(3) of the Code. A state statute cannot reset bankruptcy priorities. *In re Arrow Carrier Corp.,* 154 B.R. 642, 646–47 (Bankr.D.N.J.1993); *In re Webster,* 126 B.R. 4, 5 (Bankr.D.Me.1991).

Accordingly, the claim of MSISF for priority status for workers' compensation benefits accrued but unpaid as of the date of filing is denied.

### B. *Administrative expense pursuant to § 503(b)(1)(A)* [2]

Lastly, MSISF contends that the allowed portion of the claim is an administrative expense. It bifurcates its claim into the employee's claims which accrued and which MSISF has paid post-petition, and the costs MSISF incurred post-petition in administering the claims.

■ Administrative expenses include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). This definition should be narrowly construed. *Isaac v. Temex Energy, Inc. (In re Amarex, Inc.),* 853 F.2d 1526, 1530 (10th Cir.1988); *United Trucking Service, Inc. v. Trailer Rental Co., Inc. (In re United Trucking Service, Inc.),* 851 F.2d 159, 164 (6th Cir.1988). The purpose of the administrative priority is to induce creditors to do business with the debtor post-petition. *In re Jartran, Inc.,* 732 F.2d 584, 586 (7th Cir. 1984). In order to preserve the value of the intended priority, a claim must fail if it does not comport with the underlying purpose. *Id.*

■ A claim will be afforded administrative priority if the debt: (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity; and (2) is beneficial to the debtor-in-possession in the operation of the business. *In re Jartran, Inc.,* 732 F.2d at 586–87; *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.),* 536 F.2d 950, 954 (1st Cir.1976). The benefit to the business must be direct and substantial. *Employee Transfer Corp. v. Grigsby (In re White Motor Corp.),* 831 F.2d 106, 110 (6th Cir.1987).

#### 1. *Workers' compensation obligations*

■ It is undisputed that all workers' compensation claims paid by MSISF on behalf of the Debtor are being paid to employees who suffered injuries long before Debtor filed its petition for relief in bankruptcy. A number of cases have held that workers' compensation claims for injuries that occurred pre-petition but are paid post-petition are not administrative expenses. *See St. Paul Fire & Marine Ins. Co. v. Rea Express, Inc. (In re Rea Express, Inc.),* 442 F.Supp. 71, 72 (S.D.N.Y.1977), *aff'd,* 591 F.2d 1331, 1331–32 (2d Cir.1978); *In re Columbia Packing Co.,* 34 B.R. 403, 404 (Bankr.D.Mass. 1983); *see also Grantham v. Eastern Marine, Inc.,* 93 B.R. 752, 754 (Bankr.N.D.Fla. 1988) (holding that benefits payable under Longshore and Harbor Workers' Compensation Act are analogous to workers' compensation benefits and are not administrative expenses). It has also been held that the claim of a statutorily created fund for reimbursement of analogous type benefits is not entitled to administrative expense status. *Grantham,* 93 B.R. at 754. These cases correctly concluded that such benefits are not entitled to administrative expense priority for one of two reasons, each of which is applicable here.

First, the claim did not arise from a post-petition transaction with the debtor-in-possession. A claim is defined as a "right to payment." 11 U.S.C. § 101(5). Under state

---

2. MSISF would have to file a claim for an administrative expense once it depletes the Letter of Credit or at the end of the case to be entitled to an administrative priority. The parties have agreed that MSISF has not done so.

law, a workers' compensation claim arises at the moment of the injury. *See Joyce v. Lewis Bolt & Nut Co.*, 412 N.W.2d 304, 307 (Minn.1987). The employee's right to payment, the Debtor's obligation to pay, and MSISF's obligation to pay when Debtor does not all arise when the employee is injured pre-petition. Were an employee to file a claim, the employee's claim would be a general unsecured claim, see discussion *supra.* To grant MSISF an administrative expense would effectively entitle MSISF to bootstrap a higher priority claim to a general unsecured claim.

This scenario is indistinguishable from the situation where a tort claim is asserted and reduced to judgment against a debtor pre-petition, and an insurance company pays the claim post-petition in compliance with an insurance policy. When the insurance company pays on the claim, it steps into the shoes of the original claimant and has a general unsecured claim against the debtor. The insurance company is precluded from elevating the status of the claim to an administrative claim simply because it paid the claim post-petition. *See, e.g., West Virginia Hosp. Ins. Ass'n v. Broaddus Hosp. Ass'n, (In re Broaddus Hosp. Ass'n)*, 159 B.R. 763, 768–69 (Bankr.N.D.W.Va.1993) (where injury occurred pre-petition, insurer stepped into the shoes of underlying tort plaintiff and was denied administrative priority status); *Guaranty Nat'l Ins. Co. v. Greater Kansas City Transp., Inc.*, 90 B.R. 461, 464 (D.Kan.1988) (holding that insurer's post-petition payment of pre-petition tort claim against insured debtor was not entitled to administrative priority status).

MSISF's claim is also not an administrative expense since it does not directly and substantially benefit the estate. Rather, the payments are made principally and substantially for the benefit of the employees and for the benefit of MSISF itself. MSISF contends that payment of the workers' compensation benefits ensures that injured employees return to work, and fosters the morale of the work force. Even assuming that Debtor's business is continuing, this is not sufficient enough to benefit the estate. The nature of workers' compensation benefits illus-

trate how MSISF's argument is misplaced. The purpose of according administrative priority to employees' wages is to encourage employees to work and thus keep the business afloat. Unlike wages, workers' compensation benefits are paid because an employee is unable to work. While an employer is legally obligated to pay benefits, such payment is not a prerequisite to maintaining a full and active work force, which in turn will benefit the estate.

### 2. *Expenses in administering the obligations*

■ Similarly, and for similar reasons, that portion of the allowed claim that relates to the expenses of administering the obligations is not likewise an administrative expense under § 503(b)(1)(A).

According to MSISF, the costs were incurred only because the debtor elected not to administer the claims itself. Therefore, MSISF contends that the estate benefited by having someone else "do its work." Specifically, MSISF insists that it screens each claim to determine its validity. This minimizes the employees' claims which, in turn, minimizes MSISF's claim against the estate.

This is not the kind of benefit contemplated by § 503(b)(1)(A). While beneficial, it is not necessary. The language explicitly requires that the costs be "actual and necessary." Were MSISF not to administer the benefits, Debtor would never have incurred the costs. Instead, the employees' claims would have been general unsecured claims distributed under a plan of reorganization. *See, e.g., Broaddus Hosp.*, 159 B.R. at 769 (finding that insurer's payment of debtor's pre-petition liability did not confer a benefit upon the debtor-in-possession and was not a necessary cost); *see also Guaranty Nat'l Ins.*, 90 B.R. at 464. Accordingly, the portion of the claim covering MSISF's actual expenses is not entitled to administrative priority. Rather, it is a general unsecured claim.

### CONCLUSION

Pursuant to § 502(e)(1)(B), the claim is allowed to the extent that MSISF has paid workers' compensation benefits in excess of $523,000 on the date of this Order. Further,

the costs MSISF has incurred and expects to incur in administering such payments are allowed and shall be estimated pursuant to § 502(c). The allowed portion of the claim shall be treated as a general unsecured claim. Future estimated obligations are disallowed.

ACCORDINGLY IT IS HEREBY ORDERED THAT:

1. To the extent that MSISF has paid workers' compensation benefits on or before the date of this Order, the claim is ALLOWED;

2. The portion of the claim that includes past or future costs in administering the obligations is ALLOWED;

3. The allowed portion of the claim is treated as a general unsecured claim; and

4. Within 10 days of the date of this Order the parties shall jointly obtain a date for an evidentiary hearing on the remaining issues with respect to this claim.