### In re PACESETTER DESIGNS, INC., Debtor.

### Bankruptcy No. 89–B–05670–A.

United States Bankruptcy Court, D. Colorado.

May 3, 1990.

---

Alan B. Hendrix, Denver, Colo., for Monique R. Strous.

Melody Dawson, Englewood, Colo., for trustee.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion and Request for Approval and Payment of Administrative Expense ("Motion") filed by Monique R. Strous ("Claimant" or "Strous"), the Chapter 7 Trustee's Objection to Motion, Strous' Memorandum Brief with Attached Authority, and the Chapter 7 Trustee's Response to Strous' Memorandum Brief. The Court, having reviewed the pleadings and the file, having taken evidence and argument in Open Court on March 27, 1990, and the Court being otherwise fully advised in the premises, does make the following findings of fact and conclusions of law, and enters judgment accordingly.

## FINDINGS OF FACT

In summary, this case involves the claim of an employee of this Debtor during the brief period of time that the Debtor was, previously, a Chapter 11 debtor-in-possession. The Claimant, Monique R. Strous, claims approximately $92,866.04 [1] as an administrative claim in the Chapter 11 case pursuant to 11 U.S.C. § 503(b), due, in part, to the fact that the Debtor-in-Possession failed to maintain workers' compensation insurance.

This bankruptcy case was commenced by the filing of a Petition under Chapter 11 of Title 11, U.S.C., on April 28, 1989. As an employee of the Debtor-in-Possession, on June 16, 1989 the Claimant sustained an injury to her first and second fingers of her dominant hand by the cut of a radial arm power saw, all in the normal course and scope of her employment for the Debtor.

Effective July 29, 1989, the Court converted the Chapter 11 case to one under Chapter 7. Shortly thereafter, the Trustee, Harvey Sender, was appointed and has administered this case in the ordinary course.

At the time of the accident, the Chapter 11 Debtor–in–Possession [2] was *not* carry-

---

1. Grand total of claim of Monique R. Strous, as reflected in Exhibit F entered at March 27, 1990 hearing:

| | |
|---|---|
| "Medical | — $ 6,853.82 |
| TTD [Temporary Total Disability] (6/–17/8–14–89) @ 212.67/wk | — $ 1,762.04 |
| Disfigurement | — $ 1,000.00 |
| Permanent Disability (Since minor) | — $ 37,560.00 |
| Future Benefits | |
| Medical (Re: Fusion) | — $ 7,500.00 |
| Waiver of Re-opening | — $ 5,000.00 |
| 10 WKS TTD | — $ 2,126.70 |
| Additional Comp (50%) | — $ 30,744.49 |
| Penalty (No Admit/Deny) clmt ½ of (21 days @ 30.38/day) | — $    318.99 |
| GRAND TOTAL | $ 92,866.04" |

2. The Debtor–in–Possession under Chapter 11 in this case, evidently failed on most all counts to fulfill its statutory obligations and its fiduciary responsibilities which is reflected, in part, by the United States Trustee's Motion to Dismiss or Convert filed July 13, 1989 which states, in pertinent part, as follows:

"2. The debtor is not cooperating with, nor furnishing regular reports of operations to the Acting United States Trustee, contrary to Bankruptcy Rule X–1007(b). The debtor has submitted no monthly financial information to the Acting United States Trustee.

3. The debtor has failed to pay its quarterly fees as required by 28 U.S.C. § 1930. The debtor owes a fee for the second quarter of 1989. In due course the debtor will also owe a fee for the third quarter of 1989.

4. The debtor is a Colorado corporation. The bankruptcy schedules and statements received by the Acting United States Trustee contain no corporate resolution authorizing the bankruptcy filing. Local Rule 3(B).

5. Upon information and belief, the debtor is not represented by local counsel. The bankruptcy petition is signed by an attorney with

ing workers' compensation insurance despite the fact that such a practice violates statutes of the State of Colorado,[3] the express requirements set forth by the United States Trustee for this District, and the implicit duties of a debtor-in-possession set out in the Bankruptcy Code and Bankruptcy Rules.[4] Due to this failure to carry workers' compensation insurance, the Claimant has been denied recovery, in whole and in part, from the state workers' compensation fund for recompense. She is, consequently, seeking payment from the Chapter 7 Trustee as an administrative claim in the predecessor Chapter 11 case pursuant to Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code.

## CONCLUSIONS OF LAW

"[B]ankruptcy courts have broad discretion in determining whether to award administrative expenses priority." *In re Dant & Russell, Inc.*, 853 F.2d 700 (9th Cir.1988). Nevertheless, this Court is bound by the applicable statutes governing that issue. The issue of whether this Claimant is entitled to payment of her claim, in whole or in part, as a priority cost of administration claim is controlled, primarily, by the following provisions:[5]

[507] (a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

11 U.S.C. § 507(a)(1).

[503] (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:

11 U.S.C. § 503(b)(1)(A).

The issue presented here is influenced by the language—and perhaps more importantly the concept—embodied in 11 U.S.C. § 364(a) which states, in pertinent part:

If the trustee [6] is authorized to operate the business of the debtor under section ... 1108 ..., unless the court orders otherwise, the trustee may obtain unse-

---

an Oregon address. In fact, no application to hire counsel has been received by the Acting United States Trustee. Local Rule 16.

6. Upon information and belief, the debtor has no workers' compensation insurance."

3. C.R.S. § 8–52–110 (1986 Supp.) states:

"**8–52–110. Defaulting employer enjoined from continuing business.** Any employer subject to the terms and provisions of articles 40 to 54 of this title who fails to insure or to keep the insurance required by said articles in force or who allows the same to lapse or fails to effect a renewal thereof shall not continue any of his business operations while such default in effective insurance continues. The director may institute the proper action to enjoin any such employer from continuing his business operations during any such default."

4. A debtor-in-possession has a host of duties, including the duty to (a) follow applicable state law, (b) comply with proper rules and regulations, and (c) fulfill obligations as a fiduciary. *See*, 11 U.S.C. §§ 1107, 1106, and 704(8).

5. Distribution of assets in Chapter 7 is initially determined by Section 726(b) which provides: "Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6) or (7) of section

507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112, 1208 or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title." 11 U.S.C. § 726(b). Distribution of assets in Chapter 7 is further determined by Section 726(a) which provides in pertinent part: "Except as provided in section 510 of this title, property of the estate shall be distributed—(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;...." 11 U.S.C. § 726(a).

6. In this case, the Debtor–in–Possession, and not a trustee, was operating the business. But Section 1107 gave this Debtor–in–Possession the same authority to operate the business as a trustee.

cured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. § 364(a).

This Court believes that, to a limited degree, the language in Section 364(a) expands on and enlarges the otherwise strict, technical language of Section 503(b)(1)(A). The Trustee not incorrectly argues that the precise language of Section 503(b)(1)(A) limits and narrows an administrative expense exclusively to those which are "actual, necessary costs ... of preserving the estate...." Indeed, there is ample case law which, generally, supports a narrow application of that language. *See, In re Lister*, 846 F.2d 55 (10th Cir.1988); *In re Amarex*, 853 F.2d 1526 (10th Cir.1988); *In re Consolidated Oil & Gas, Inc.*, 110 B.R. 535 (Bankr.D.Colo.1990).

Under the facts of this Motion, however, this Court is inclined to accord a limited, specific Chapter 11 administrative cost claim to the Claimant pursuant to the above cited, applicable statutory language. The rationale for such an award is that the direct, necessary medical expenses incurred by the Claimant as a result of the injury sustained while employed by the Debtor-in-Possession and the wages earned during the course of her employment prior to conversion to Chapter 7, can fairly and appropriately be deemed "unsecured debt [incurred] in the ordinary course of business allowable under Section 503(b)(1) ... as an administrative expense" by the Debtor-in-Possession authorized to operate the business under Section 1108 (11 U.S.C. § 364(a)). This Debtor-in-Possession conducted its business under Section 1107 of the Bankruptcy Code, and did, simply stated, "incur unsecured debt in the ordinary course of business." It incurred a post-petition financial obligation in the ordinary course of business, sufficient to qualify as a Section 503(b)(1) obligation.

The Claimant was an employee of, and was working for and on behalf of, the Debtor and was contributing to the Debtor-in-Possession's business operation. Performance of her tasks entitled her to wages being earned and to qualify as one contributing to, or otherwise, benefitting, the estate. Wages qualify in accordance with the specific language of the statute as well as by case law. *In re Amarex, supra.*

Workers are induced to provide their services to employers due to a variety of considerations. Although the primary consideration is income, employees also receive benefits such as health insurance and workers' compensation insurance which is a statutory requirement in Colorado. C.R.S. § 8–52–110, *supra.* It is these inducements upon which employees rely, and which enable employers, particularly debtors-in-possession, to retain their employees so as to be able to continue in operation. In *In re Illinois–California Express, Inc.*, 72 B.R. 987 (D.Colo.1987), Judge Kane held that employees' severance pay was a legitimate Section 503(b)(1)(A) administrative expense, and quoted from the seminal case of *In re Mammoth Mart, Inc.*:

> [I]f the debtor-in-possession had, induced employees to remain on the job, promised them that if discharged they would receive severance pay (even though based on prior practice), in that case the fact that the employees performed services post-petition would constitute the entire consideration necessary to support a claim of administration. *In re Mammoth Mart, Inc.*, 536 F.2d 950, 955 n. 4 (1st Cir.1976).

*In re Illinois–California Express, Inc., supra.*

The only real question in this case is do the Claimant's direct and necessary medical expenses qualify as a legitimate Chapter 11 cost of administration rather than a general, unsecured Chapter 7 creditor claim? This Court answers that question in the affirmative by classifying the medical expenses incurred as a post-petition, unsecured debt incurred in the ordinary course of business by the Chapter 11 Debtor-in-Possession. The Debtor-in-Possession failed to carry proper workers' compensation insurance and, consequently, incurred unsecured debt associated with that failure. It was an injury incurred in the ordinary course of Debtor-in-Possession's

business; it was an expense incurred in the ordinary course of business. Absent the filing of Chapter 11, the Debtor would most assuredly have been responsible for the medical expenses and wages of the Claimant.

This Court concludes that the other expenses claimed by the Claimant cannot qualify as post-petition unsecured debt incurred in the ordinary course of business allowable under Section 503(b)(1) and such expenses, beyond question, do not qualify as "actual, necessary costs ... of preserving the estate ... pursuant to § 503(b)(1)." To try and qualify the additional damages claimed by the Claimant as a cost of administration is too strained, too unreasonable, and too disparate with the language and intent of the Bankruptcy Code. It would also be inequitable to other creditors.

This Court concludes this opinion with the observation that it appears someone failed to fulfill his/her responsibilities in the Chapter 11 case and failed to protect the interests of the estate and creditors—including this Claimant—in the Chapter 11 case. Failure to carry workers' compensation insurance while engaging in business as a Debtor–in–Possession, or other similar failures to protect and preserve the assets and interests of the estate, creates inferences of negligence, recklessness, breach of fiduciary duty, or other wrongdoing by persons in control of the Debtor–in–Possession. This Court believes that it is incumbent upon the Chapter 7 Trustee, pursuant to 11 U.S.C. § 704 and other related provisions of the Code and Rules (B.R. 2015(a)), to investigate the circumstances of this claim, evaluate the rights of the estate, if any, respecting this claim, and pursue the estate's rights and claims against those who failed their responsibilities in the Chapter 11 case, if any. Neither the estate nor the unsecured creditors should be responsible for nor pay for the negligence or failures of those who were in control of the Chapter 11 Debtor–in–Possession; the person(s) in control should. *See, Sherr v. Winkler,* 552 F.2d 1367 (10th Cir.1977).

Aside from the matters of interpretation of the statute, equity demands that, under these particular circumstances, the medical expenses incurred by the employee of the Debtor–in–Possession be borne by the Debtor–in–Possession rather than the employee, an innocent bystander. The adverse consequences of forcing this Chapter 11 employee to pay her own medical expenses are great and set a precedent inimical to all Chapter 11's and the reorganization process. It is reasonable to conclude that this employee—and any employee of a responsible Chapter 11 debtor-in-possession—could assume *and should be able to assume* that necessary and adequate insurance, particularly workers' compensation insurance, was being properly maintained as she worked as an employee of the Debtor–in–Possession. To allow employees of debtors-in-possession to be victimized by an irresponsible manager of a debtor-in-possession and to suffer great harm at the hands of an irresponsible debtor-in-possession, is to do a disservice to Chapter 11 debtors and violence to the spirit and intent of the reorganization provisions of the Bankruptcy Code. Indeed, if employees were not allowed to proceed on some reasonable assumption that a debtor-in-possession is maintaining certain basic, minimum protections of their health and safety and as required by state statute, the Bankruptcy Code, and applicable rules, then a great disservice and manifest injustice will have been occasioned on all employees as well as the reorganization process.

IT IS THEREFORE ORDERED that Monique R. Strous' Motion and Request for Approval and Payment of Administrative Expense is GRANTED with regard to the Chapter 11 case, insofar as her direct, necessary medical expenses are concerned (an amount represented to be $6,853.82), plus her wages commencing June 17, 1989 to the date of conversion July 29, 1989, at the rate of $212.67 per week.

IT IS FURTHER ORDERED that the Trustee shall timely examine the issues set forth herein and determine what action, if any, is warranted to be commenced against persons associated with or in control of the Chapter 11 Debtor in order to protect the

736

interests of this estate and the creditors of this Chapter 7 estate.