In re MEI DIVERSIFIED, INC., et al., Debtors.

James A. POTTER, Trust Administrator, Objector—Appellant,

v.

CNA INSURANCE COMPANIES, Claimant—Appellee.

No. 96–1676.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 21, 1996.

Decided Feb. 7, 1997.

Shannon Mary O'Toole, Minneapolis, MN, argued, for appellant.

David J. Fischer, Chicago, IL, argued (Jonathan W. Young, on the brief), for appellee.

Before BEAM and LOKEN, Circuit Judges, and MOODY,[*] District Judge.

LOKEN, Circuit Judge.

James A. Potter is Trust Administrator for the Chapter 11 plan of reorganization of MEI Diversified, Inc., and its subsidiaries (collectively "MEI"). MEI purchased workers compensation insurance from CNA Insurance Companies from June 1987 through June 1993, incurring premium obligations calculated under what is called a retrospective rating formula. MEI petitioned for Chapter 11 relief in February 1993. At issue are CNA's claims for $2,303,075 in unpaid pre-petition premiums, and $221,315 in unpaid post-petition premiums for which CNA claims an administrative priority. The Trust Administrator objected to these claims, the bankruptcy court[1] allowed both claims in full, the district court[2] affirmed, and the Trust Administrator appeals. First, he argues that most of CNA's pre-petition claim is a contingent claim for reimbursement that is disallowed under 11 U.S.C. § 502(e)(1)(B). Second, he challenges CNA's claim for administrative priority because MEI as debtor did not ratify the continuing insurance contract. We affirm.

---

[*] The HONORABLE JAMES M. MOODY, United States District Judge for the Eastern District of Arkansas, sitting by designation.

[1] The HONORABLE ROBERT J. KRESSEL, United States Bankruptcy Judge for the District of Minnesota.

[2] The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota.

## I. The § 502(e)(1)(B) Issue.

Retrospective rating allows workers compensation insurance premiums to be modified on the basis of the actual loss experience of the insured. *See* Minn.Stat. § 79.52, subd. 9; 5 ANDERSON & RHODES, COUCH ON INSURANCE 2D § 30:17 (rev. ed.1984). Because claims first filed by injured employees during the policy period develop into paid losses (insurance benefits) in later years, retrospective rating requires that the total premium be recalculated after the policy period as the insured's actual loss experience either exceeds or falls short of the parties' initial expectations. Under the CNA policies here at issue, CNA billed MEI an initial estimated premium at the start of each policy period. Six months after the policy expired, and annually thereafter, CNA recalculated the premium based upon MEI's actual claims experience. Each recalculation resulted in a premium refund or an additional premium assessment, depending upon MEI's experience.

MEI petitioned for Chapter 11 relief in the midst of this process, with six policy periods still subject to annual recalculation. In August 1993, CNA filed an estimated claim for all unpaid premiums, as § 502(c)(1) permits. After MEI's Plan was confirmed in September 1994, the Trust Administrator objected to this claim. The parties deferred a hearing on the objection while CNA recalculated the premiums through July 31, 1995. That recalculation showed total premiums due of $2,524,390, and attributed $221,315 of this amount to the post-petition policy period (February 23 to June 1, 1993). CNA asserted administrative priority for this post-petition claim, and an unsecured prepetition claim for the balance, $2,303,075. The Trust Administrator "agreed to accept CNA's calculations" for the purpose of the parties' pending summary judgment motions.

Section 502(e)(1)(B) disallows "any claim for reimbursement ... of an entity that is liable with the debtor on ... the claim of a creditor, to the extent that ... such claim ... is contingent as of the time of allowance or disallowance." The Trust Administrator's disallowance theory is based upon the manner in which CNA calculates the total premium owed under its retrospective rating formula. The total premium is built up in segments—it consists of components for general overhead and profit, paid losses, reserves, retro and deductible ultimate losses, loss adjustment expenses, loss limit charges, and taxes. The Trust Administrator characterizes the components for reserves and ultimate losses as simply "a pass-through of the amounts CNA believes it will pay" out in future workers compensation benefits. Because both MEI and CNA are liable to injured employees for those benefits, and because the amount of future benefit claims is unknown, the Trust Administrator argues that § 502(e)(1)(B) disallows these portions of CNA's total unpaid premiums claim.

 The Trust Administrator's theory is completely divorced from the purpose of § 502(e)(1)(B), which is to "prevent[ ] competition between a creditor and his guarantor for the limited proceeds in the estate." H.R.Rep. No. 95–595, at 355 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6310. Although the statute is not limited to claims by guarantors and sureties, its focus is on claims by those who *may become* liable to a third party because the debtor fails to satisfy a primary liability to that third party. *See In re Dant & Russell, Inc.,* 951 F.2d 246, 248–49 (9th Cir.1991); 3 COLLIER ON BANKRUPTCY ¶ 502.05 (1996). As the court explained in *In re Hemingway Transp., Inc.,* 993 F.2d 915, 923 (1st Cir.), *cert. denied,* 510 U.S. 914, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993):

> The sole purpose served by section 502(e)(1)(B) is to preclude redundant recoveries on identical claims against insolvent estates in violation of the fundamental Code policy fostering equitable distribution among all creditors of the same class.

 Because this case does not involve competing claims or redundant recoveries, it is not surprising that the Trust Administrator's theory fails to fit within the literal language of § 502(e)(1)(B). First, CNA's claim is not for reimbursement of workers compensation benefits CNA has paid or will pay; it is a direct claim for insurance premiums. Direct contingent claims are not disallowed by § 502(e)(1)(B). *See In re New York Trap Rock Corp.,* 153 B.R. 648, 651 (Bankr.

S.D.N.Y.1993). Contrast this situation with *In re Lull Corp.*, 162 B.R. 234 (Bankr. D.Minn.1993), on which the Trust Administrator heavily relies. *Lull* involved a contingent claim by a workers compensation guaranty association to reimburse it for paying benefits owed by a bankrupt self-insured employer. There was no direct contractual relationship between the debtor and the claimant in *Lull;* the association was a statutory surety, only liable if and when debtor defaulted on its primary self-insurance obligation. Here, on the other hand, while MEI and CNA are both liable to injured employees under state law,[3] CNA looks to MEI to pay premiums, and beneficiaries look to CNA to pay benefits (with CNA's license to continue doing business dependent upon it honoring those benefit obligations). Consistent with this regime, no policy beneficiary has asserted a benefits claim against MEI's estate.

■ Second, CNA's claim is not "contingent" as that term is used in § 502(e)(1)(B). Section 502(e)(1)(B) is aimed at claimants who are secondarily liable to another creditor of the bankrupt. The primary example of a contingent claim in this context is when "a codebtor has not paid the creditor and [thereby] established his right to payment from the debtor." *In re A & H, Inc.*, 122 B.R. 84, 86 (Bankr.W.D.Wis.1990) (quotation omitted). Here, each recalculation of MEI's workers compensation premiums resulted in an immediate, specific premium obligation from MEI to CNA. True, those premiums were subject to future recalculation, but that does not render the premiums presently owing "contingent." We reject the Trust Administrator's attempt to compartmentalize current premium charges by labelling as contingent the portions calculated by reference to actuarial estimates of future events.

## II. The Administrative Priority Issue.

■ CNA seeks administrative priority for its claim for postpetition insurance premiums as an "actual, necessary cost[ ] and expense[ ] of preserving the [Chapter 11] estate." 11 U.S.C. § 503(b)(1)(A). There can be no doubt that continuing workers compensation insurance is essential to preserving the estate of a Chapter 11 debtor in possession. Under state law, MEI could not have remained in business without maintaining workers compensation insurance or investing in a regulated program of self insurance.

The Trust Administrator argues that CNA is not entitled to administrative priority because the insurance was in effect when MEI filed its Chapter 11 petition, and there was no "positive postpetition act" by MEI that induced CNA to provide continuing coverage. Of course, administrative priority is limited to transactions with the debtor in possession. But in our view the absence of a "positive post-petition act" by MEI does not make the continued CNA coverage a pre-petition claim. MEI as debtor in possession could have terminated the insurance, either by exercising its power to reject executory contracts, *see* § 365, or by exercising its contractual right to cancel the policy at any time. MEI did not do so and thereby obtained an insurance product essential to its post-petition operations. In these circumstances, CNA is entitled to "administrative expense priority for the pro rata share of the premium, during the period in which the estate received benefits from the [insurance] contract." *In re Gamma Fishing Co.*, 70 B.R. 949, 955 (Bankr.S.D.Cal.1987); *accord In re Sharon Steel Corp.*, 161 B.R. 934 (Bankr.W.D.Pa. 1994).

Alternatively, the Trust Administrator argues that administrative priority is improper because MEI has made postpetition premium payments well in excess of the amount CNA allocated to post-petition premiums. There are two answers to this contention. First, it was waived when the Trust Administrator agreed to accept CNA's premium calculations allocating the total unpaid premium between pre-petition and post-petition insurance. Second, as record support for this contention, the Trust Administrator cites only to a series of checks from an independent insurance broker to CNA that bear post-petition dates. Absent further explanation, these documents do not establish that the district court erred

---

3. *See, e.g.,* Minn.Stat. §§ 176.021, subd. 1; 176.253.

in allowing CNA's carefully documented postpetition claim.

The judgment of the district court is affirmed.