United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 96-2752
_____

In re: Anderberg-Lund Printing  *
Co., also known as Lane          *
Envelope, also known as Great    *
Way Publications,                *
                                 *
          Debtor.                *
                                 *
_____  *
                                 *
W.A. Lang Co.,                   *
                                 *  Appeal from the United States
          Appellant,             *  District Court for the
                                 *  District of Minnesota.
     v.                          *
                                 *
Anderberg-Lund Printing          *
Co., also known as Lane          *
Envelope, also known as Great    *
Way Publications,                *
                                 *
          Appellee.              *
          _____

Submitted: February 10, 1997

Filed: April 7, 1997
          _____

Before MAGILL, BEAM, and LOKEN, Circuit Judges.
          _____

BEAM, Circuit Judge.

W.A. Lang Co. ("Lang") appeals from the district court's[1] affirmance of the bankruptcy court's[2] denial of Lang's claim for administrative expenses pursuant to 11 U.S.C. § 503(b).  We affirm.

## I.    BACKGROUND

Lang is a general insurance agency whose business includes the sale of worker's compensation insurance.  Lang is a licensed agent of General Insurance Company of America (GICA).  Under the agency agreement between Lang and GICA, Lang is allowed to chose between two types of billing for the GICA policies it sells.  Under "direct billing," insureds are billed by and pay premiums directly to GICA's parent company.  Under "agency billing," Lang pays to GICA the premiums due, and in turn collects the premium amount and commissions from the insured.  The Lang-GICA agency agreement obligates Lang to pay premiums due under "agency billing" policies whether or not Lang is paid by the insured.

In 1993, Lang sold a GICA worker's compensation policy to Anderberg-Lund Printing Company.  Lang elected agency billing for this policy, which was to run for the term of July 1, 1993, to July 1, 1994.  Later in 1993, Anderberg-Lund experienced financial difficulties, and failed to make payments to Lang.  As it was obliged to under the agency agreement, Lang continued to make payments on the policy to GICA.  As a result of Anderberg-Lund's delinquencies, GICA issued at Lang's request a notice of cancellation for the policy on December 14, 1993.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[2]The Honorable Nancy C. Dreher, United States Bankruptcy Judge for the District of Minnesota.

The next day, Anderberg-Lund filed for Chapter 11 bankruptcy, and continued to operate the business as a debtor-in-possession. Pursuant to 11 U.S.C. § 108(b), cancellation of the GICA policy was deferred for sixty days. At the end of this period, Anderberg-Lund was able to secure a replacement policy. After the filing of the bankruptcy petition, but before Anderberg-Lund obtained the new policy, Lang made two more premium payments to GICA. These two payments totaled $22,364.68.

Based upon a post-cancellation audit, GICA determined that it had been entitled to an earned premium of $67,928.20 for the period the Anderberg-Lund policy had been in effect. GICA had, however, received payments based on the estimated premium totaling $89,995.44. The difference, $22,067.24, was "unearned premium" that the policy required GICA to refund. When both Anderberg-Lund and Lang made demands for the unearned premium, GICA filed an interpleader complaint as an adversary proceeding in Anderberg-Lund's bankruptcy case.

In separate answers to GICA's complaint, both Anderberg-Lund and Lang laid claim to the unearned premium. Anderberg-Lund also asserted a cross-claim against Lang for damages under section 362(h) of the bankruptcy code, based on Lang's alleged violations of the automatic stay. Most significant to this appeal, Lang alleged as a cross-claim against Anderberg-Lund that the two post-petition premium payments it had made to GICA on behalf of Anderberg-Lund were an administrative expense under 11 U.S.C. § 503(b).[3] Lang claims that, deducting for that portion of the

_____

[3]Section 503(b) allows recovery from the bankruptcy estate of "the actual, necessary costs and expenses of preserving the estate . . . rendered after the commencement" of the bankruptcy case. Administrative expense claims under section 503(b) are first priority claims against the bankruptcy estate. 11 U.S.C. §

unearned premium allocable to the post-petition payments, it is entitled to an administrative expense of $18,830, the earned premium portion of the $22,364.68 it actually paid for post-petition coverage. The adversary proceeding thus concerned two sums of money: (1) the unearned premium of $22,067.24 that GICA had been overpaid over the course of the policy; and (2) the post-petition earned premium of $18,830 that Lang paid GICA after Anderberg-Lund filed for bankruptcy.[4]

The bankruptcy court heard testimony and accepted evidence in the adversary proceeding, and issued its findings, conclusions, and order on December 9, 1994. The bankruptcy court's order had three components: (1) it determined that the policy required that the unearned premium amount interpleaded by GICA be refunded to the insured, Anderberg-Lund; (2) it denied Anderberg-Lund's cross-claims for damages; and (3) it ordered that "[t]he claims made by [Lang] are DISMISSED with prejudice on the merits." No. 4-93-6995, Adv. 4-94-398, slip op. at 14 (D. Minn. Dec. 9, 1994).

Lang did not appeal from this order. On January 16, 1995, however, Lang disregarding the adversary proceeding, filed a motion in the core proceeding seeking 503(b) administrative expenses based on its claim to the post-petition earned premiums. On January 26, the bankruptcy court summarily denied Lang's motion. Lang appealed this denial to the district court, which concluded that the bankruptcy court had denied the 503(b) claim in its prior order in

_____

507(a)(1).

[4]We will assume for purposes of this appeal that the $18,830 figure Lang puts forth correctly represents the post-petition premium payments, less the amount of the unearned premium allocable to those payments.

-4-

the adversary proceeding, and that res judicata prevented Lang from relitigating the claim by motion.  Lang appeals.

## II.  DISCUSSION

The binding effect of a former adjudication, often generically termed res judicata, can take one of two forms.  Claim preclusion (traditionally termed res judicata or "merger and bar") "'bars relitigation of the same claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction.'"  Plough v. West Des Moines Community Sch. Dist., 70 F.3d 512, 517 (8th Cir. 1995) (quoting Smith v. Updegraff, 744 F.2d 1354, 1362 (8th Cir. 1984)).  Issue preclusion (or "collateral estoppel") applies to legal or factual issues "actually and necessarily determined," with such a determination becoming "conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  Montana v. United States, 440 U.S.  147, 153 (1979).  The principles of res judicata generally apply to bankruptcy proceedings.  Katchen v. Landy, 382 U.S. 323, 334 (1966).

In this case the question is one of claim preclusion since the administrative expense claim Lang brought by motion was identical to Lang's cross-claim in the prior adversary proceeding.  Claim preclusion will bar a subsequent suit when: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involved the same cause of action; and (4) both suits involved the same parties or their privies."  Lovell v. Mixon, 719 F.2d 1373, 1376 (8th Cir. 1983).  Furthermore, the party against whom res judicata is asserted must have had a full and fair opportunity to litigate the

matter in the proceeding that is to be given preclusive effect. Plough, 70 F.3d at 517.

There is no dispute that the two proceedings at issue in this case involved the same parties and the same cause of action. Therefore, we need only determine: (1) whether the bankruptcy court had jurisdiction to decide the administrative expense claim in the adversary proceeding; (2) whether the bankruptcy court's order in the adversary proceeding was a final judgment on the merits; and (3) whether Lang had a full and fair opportunity to litigate the administrative expense claim in the adversary proceeding.

## A.    The Bankruptcy Court's Jurisdiction

A claim for an administrative expense pursuant to section 503(b) is a core proceeding for which the bankruptcy court has jurisdiction under 28 U.S.C. § 157(b)(2).  Even when contested, however, a 503(b) claim is not properly brought in an adversary proceeding.  See Fed. R. Bankr. P. 7001.  Such claims are appropriately brought by motion in the bankruptcy case, and relief is typically granted in contested claims only upon notice and hearing.  Fed. R. Bankr. P. 9013, 9014; Minn. Bankr. Local Rule 1201.  See also Colandrea v. Union Home Loan Corp. (In re Colandrea), 17 B.R. 568, 583 (Bankr. D. Md. 1982) (dismissing 503(b) claim brought as a counterclaim in an adversary proceeding). Indeed, Lang's second administrative expense claim for the earned premium was made by motion in conformance with both the federal and local bankruptcy rules.

Thus, Lang's initial assertion of its administrative expense claim as a cross-claim in the adversary proceeding was unusual.  We nonetheless conclude that the claim was properly before the court

in the adversary adjudication. Section 503(b) allows the bankruptcy court to grant administrative claims "[a]fter notice and a hearing." The bankruptcy code defines "after notice and a hearing" as "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). The debtor against whom Lang brought its claim, Anderberg-Lund, was a party to the adversary proceeding and thus had full notice of Lang's claim. The factual and legal issues presented in the litigation over the unearned premium were closely related to those of the earned premium that was the subject of Lang's administrative expense claim. Given the bankruptcy court's flexibility under section 102(1)(A) to determine what procedures are appropriate for particular claims, we conclude that in this instance the bankruptcy court had jurisdiction to consider the claim in the adversary proceeding.

## B.   Final Judgment on the Merits

Lang argues that even though its claim was before the bankruptcy court in the adversary proceeding, the court's order was not a final judgment on the merits of that claim. Lang argues that the bankruptcy court did not mention in its order the administrative expense claim as an issue to be decided, that the court's factual findings do not clearly address the claim, and that the court's order does not expressly refer to the claim in its disposition. Lang argues that Rule 52 of the Federal Rules of Civil Procedure (which is incorporated by Bankruptcy Rule 7052) requires the court to "find the facts specially" with respect to each claim before it in the adversary proceeding. Thus, Lang, asserts, the bankruptcy court's order in the adversary proceeding did not fully adjudicate the administrative expense claim, and was,

therefore, not an appealable final order under Rule 54(b) of the Rules of Civil Procedure.

We agree with Lang that it is difficult to find any discussion of the administrative claim in the bankruptcy court's first order. We are reluctant, however, to conclude from this that the court did not consider or decide that question. Lang asserted that it was entitled to the earned premium as an administrative expense in its answer and cross-claim, elicited testimony during the adversary proceeding about the earned premium, and made express reference to the claim in its proposed findings, conclusions, and order. The claim was squarely before the bankruptcy court and was actively litigated, and we cannot conclude that the court simply ignored or neglected that claim in issuing its order. The bankruptcy court stated in its order that "[t]he claims made by [Lang] are DISMISSED with prejudice on the merits," and we can only surmise from this that the court fully intended that its order terminate the adversary proceeding in all of its manifestations. To the extent that the court's findings were ambiguous, Lang could have moved for an amended order or could have appealed. Whether or not the court's holdings were as complete as we might have expected, we find that its disposition was an unambiguous final adjudication on the merits of all issues before the court at that time.

## C.    Full and Fair Opportunity to Litigate

Finally, we note that this is not a case in which Lang did not have a full and fair opportunity to litigate its administrative expense claim. Not only did Lang have the opportunity, but in fact fully litigated the issue. As noted, Lang pleaded the 503(b) claim, presented evidence relevant to the earned premium, and submitted proposed findings and conclusions with regard to the

claim.   Lang actively pursued this claim in the adversary proceeding, and fairness would not be served by allowing it to relitigate this now settled matter, even though we think the issue may have been wrongly decided by the bankruptcy court.  See Potter v. CNA Ins. Cos. (In re MEI Diversified, Inc.), 106 F.3d 829, 832 (8th Cir. 1997).

**III. CONCLUSION**

The district court correctly concluded that res judicata barred Lang from relitigating the administrative expense claim it had previously asserted in the adversary proceedings.  The judgment of the district court, affirming the bankruptcy court's denial of Lang's subsequent motion for a grant of an administrative expense, is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.