### In re SUWANNEE SWIFTY STORES, INC., EIN: 58–0434460, Debtor.

**Bankruptcy No. 96–60807–JTL.**

United States Bankruptcy Court,
M.D. Georgia,
Thomasville Division.

Aug. 17, 1998.

Ward Stone, Jr., Macon, Georgia, for Plaintiff.

James C. Frenzel, Atlanta, Georgia, for Defendant.

Mark W. Roadarmel, Macon, Georgia, Assistant U.S. Trustee.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On May 21, 1998, the court held a hearing on the motion of the Georgia Self–Insurers & Guaranty Trust Fund ("Trust Fund") for payment of administrative expenses and to pay workers' compensation claims on a regular basis. At the conclusion of the· hearing, the court took the matter under advisement. After consideration of the applicable statutory law and case law, the court, for reasons indicated below, will approve partial payment of the administrative expenses requested. However, the court will not allow the payment of future claims for administrative expenses without receiving further court approval.

### Facts

On December 12, 1996, Debtor, Suwannee Swifty Stores, Inc. ("Suwannee Swifty") filed a petition for relief under Chapter 11 of the Bankruptcy Code ("Code"). Prior to filing for bankruptcy relief, with respect to workers' compensation insurance, Suwannee Swifty was self-insured in accordance with Georgia law. *See* O.C.G.A. § 34–9–380 et seq. In order to participate as a self-insurer, Suwannee Swifty caused letters of credit to be issued by NationsBank N.A. (South) ("NationsBank") and The Citizens National Bank of Quitman ("Citizens Bank") The letters of

credit, which totaled $350,000, were issued in favor of the Trust Fund to operate as security for Suwannee Swifty's workers' compensation obligations.

On December 24, 1996, the court entered an order authorizing Suwannee Swifty to continue to be self-insured and to continue to pay any prepetition workers' compensation claims. Additionally, on July 11, 1997, Suwannee Swifty filed an adversary proceeding against the Trust Fund and NationsBank.[1] Suwannee Swifty sought both preliminary and permanent injunctive relief as well as a temporary restraining order.

On July 18, 1997, the court entered a temporary restraining order ("TRO") preventing the Trust Fund from drawing upon the letter of credit with NationsBank. The TRO was conditioned on Suwannee Swifty paying all prepetition and postpetition non controverted workers' compensation claims as they arose as well as all administrative charges incurred for administering Suwannee Swifty's workers' compensation claims. If Suwannee Swifty failed to pay any claims as they became due, the TRO authorized the Trust Fund to submit notice of its intent to revoke Suwannee Swifty's self-insured status and to draw upon the NationsBank letter of credit.

On July 9, 1997, the court entered an order approving the joint motion of Suwannee Swifty and NationsBank to amend the letter of credit with NationsBank. The amendment extended the expiration date of the letter of credit to August 27, 1997. Moreover, on August 25, 1997, the court entered an order on a second joint motion of Suwannee Swifty and NationsBank to amend the letter of credit. This amendment further extended the expiration date of the letter of credit to November 25, 1997.

The Trust Fund subsequently issued notice of its intent to revoke Suwannee Swifty's self-insured status. No objections were made and the Trust Fund collected on both letters of credit. Since the Trust Fund revoked Suwannee Swifty's self-insured status, the Trust Fund has regularly paid all of Suwannee Swifty's unpaid workers' compen-

sation liabilities. Included in the payments the Trust Fund has made are amounts for at least four (4) postpetition injuries to Suwannee Swifty employees. Prior to Suwannee Swifty's self-insured status being revoked, Suwannee Swifty paid $132,924.15 in prepetition workers' compensation claims and $36,978.29 in postpetition workers' compensation claims.

On January 6, 1998, the Trust Fund filed two proofs of claim in this case. Proof of claim number 350 is in the amount of $88,000.00, purported to be for an administrative expense claim for postpetition workers' compensation claims. Proof of claim number 351 is in the amount of $611,000.00, purported to be an unsecured non priority claim for prepetition workers' compensation claims. Both claims are based upon what the Trust Fund predicts it will have to pay. At the time of the hearing, the Trust Fund had paid out a total of approximately $190,000 in both prepetition and postpetition claims.

On April 23, 1998, the Trust Fund filed an application for payment of administrative expense and motion to compel debtor to pay postpetition workers' compensation claims on an ongoing basis. In its motion, the Trust Fund asks the court to approve as an administrative expense $39,490.42. This represents the amount of payments the Trust Fund has made on postpetition workers' compensation claims on behalf of Suwannee Swifty.

Moreover, the Trust Fund also asks in its motion for the court to approve future ongoing postpetition claims as administrative expense without the necessity of the Trust Fund having to file applications for the payments. The Trust Fund contends that it is undersecured with respect to the prepetition claims it has paid and it would be appropriate for the court to approve future administrative expense claims without court approval for each specific claim.

Suwannee Swifty objects to the Trust Fund's motion.[2] Suwannee Swifty contends that before the Trust Fund would be entitled to an administrative expense claim it should

---

1. Adversary proceeding 97–6021.

2. The Creditor's Committee joined in Suwannee Swifty's objection.

have to exhaust the letters of credit proceeds first. Furthermore, Suwannee Swifty disputes the propriety of part of the Trust Fund's postpetition workers' compensation claim.

### Discussion

The court will first address whether ·the proceeds from the letters of credit secure the prepetition claims or the postpetition claims. Next, the court will address whether the Trust Fund is entitled to an immediate payment as an administrative expense for the amounts that it has expended for postpetition claims. Finally, the court will address whether the Trust Fund is entitled to payment of future amounts expended for postpetition claims on an ongoing basis without court approval.

■ Section 34–9–382 of the Official Code of Georgia Annotated ("O.C.G.A.") establishes the Georgia Self–Insurers Guaranty Trust Fund. The Trust Fund requires all participants to maintain an acceptable form of security, such as an irrevocable letter of credit, in an amount not less than $100,-000.00. O.C.G.A. § 34–9–386(b)(2). The Trust Fund is authorized to seek reimbursement from a participant for any payments the Trust Fund makes on behalf of the participant. O.C.G.A. § 34–9–387(a). Moreover, the Trust Fund is authorized to use a participant's security deposit to satisfy the participant's workers' compensations obligations. O.C.G.A. § 34–9–387(b).

As a result, Suwannee Swifty was required to maintain some form of security with the Trust Fund. Suwannee Swifty accomplished this by causing the letters of credit to be issued. The letters of credit operated as security for any obligations the Trust Fund paid on behalf of Suwannee Swifty.

The court notes that the letters of credit were issued prepetition. Moreover, the postpetition agreements approved by the court with respect to the letters of credit are extensions of the prepetition letters of credit, not newly issued postpetition letters of credit. Furthermore, the court points out that a creditor's claim is determined as of the date the petition is filed. *See* 11 U.S.C. § 502(b).

The court finds that the letters of credits, and any proceeds thereof, should first secure the Trust Fund's prepetition claim. The letters of credit were issued prepetition in accordance with Georgia law to secure the obligations of Suwannee Swifty. As a result, when Suwannee Swifty filed for bankruptcy relief, the letters of credit already existed to secure the Trust Fund's claim. Accordingly, the court finds it appropriate to allocate the letters of credit proceeds as security for the prepetition claim.

■ The court will now address whether the Trust Fund is entitled to an immediate payment as an administrative expense claim for the amounts that the Trust Fund has expended on Suwannee Swifty's postpetition workers' compensation claims. The court finds that any payments the Trust Fund has made with respect to injuries that occurred prepetition are not entitled to administrative expense status. *See In re Eli Witt Company,* 213 B.R. 396, 399 (Bankr.M.D.Fla.1997); *Buckner v. Westmoreland Coal Company (In re Westmoreland Coal Company),* 213 B.R. 1, 14 (Bankr.D.Colo.1997); *In re Lull Corporation,* 162 B.R. 234, 241 (Bankr.D.Minn. 1993); *Grantham v. Eastern Marine, Inc.,* 93 B.R. 752, 754 (Bankr.N.D.Fla.1988); and *In re Columbia Packing Company,* 34 B.R. 403, 404 (Bankr.D.Mass.1983).

■ The court, however, finds that payments made on behalf of Suwannee Swifty employees for injuries that occurred postpetition are entitled to administrative expense status. *See Potter v. CNA Insurance Companies (In re MEI Diversified, Inc.),* 106 F.3d 829, 832 (8th Cir.1997); *Industrial Commission of Arizona v. Solot (In re Sierra Pacific Broadcasters),* 185 B.R. 575, 578 (9th Cir. BAP 1995); *In re Eli Witt Company,* 213 B.R. 396, 399 (Bankr.M.D.Fla.1997); and *In re Pacesetter Designs, Inc.,* 114 B.R. 731, 735 (Bankr.D.Colo.1990).

Section 503 of the Code provides for the allowance of a claim as an administrative expense for amounts expended for "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C.

§ 503(b)(1)(A). The court finds that the payment of the postpetition workers' compensation claims fall within § 503(b)(1)(A). Therefore, the Trust Fund is entitled to paid, as an administrative expense, for the amounts it has expended on behalf of Suwannee Swifty for postpetition injuries to employees.

In its motion, the Trust Fund sought approval of $39,490.42. At the hearing, Suwannee Swifty disputed the propriety of $13,-731.17 of the Trust Fund's $39,490.42 claim. The parties agreed to continue the hearing with respect to the propriety of this payment to a later date should the court approve the postpetition amounts as administrative expense claims. Accordingly, at this time, the court will approve an administrative expense claim of $25,759.25 ($39,490.42 less $13,-731.17). The court will hold a hearing to determine the propriety of the disputed amounts.

Finally, the court will consider the Trust Fund's request that it not have to seek court approval on an ongoing basis to receive administrative expense claims for amounts it pays out in the future. The prefatory language to § 503(b) of the Code requires a notice and hearing before the court can approve any administrative expense claims. As a result, the court does not think that it would be appropriate to allow future administrative expense claims without court approval and without notice and a hearing. Therefore, the court will deny the Trust Fund's request for payment of future administrative expense claims on an ongoing basis without further court approval.

*Conclusion*

The court finds that the proceeds from the letters of credit issued as security for Suwannee Swifty's self-insured status operate as security for the Trust Fund's prepetition claim. The court will approve the immediate payment of an administrative expense claim of $25,759.25 to the Trust Fund. The court will hold a hearing on the propriety of the payments in dispute on Monday, September 28, 1998, at 2:00 p.m. in the Bankruptcy Courtroom, Room 309, 901 Front Avenue, One Arsenal Place, Columbus, Georgia. The court will deny the Trust Fund's request for payment of future administrative expense claims without further court approval.

Finally, should the Trust Fund's prepetition claim ultimately prove to be less than the letters of credit proceeds, the Trust Fund will be required to credit the additional funds to any administrative expense claims that Suwannee Swifty will have already paid. This, of course, could result in funds being returned to Debtor.