**In re ELEVA, INC., Debtor.**

**Bankruptcy No. 97C–22299.**

United States Bankruptcy Court,
D. Utah.

Oct. 1, 1998.

Michael N Zundel, Jardine Linebaugh & Dunn, Salt Lake City, UT, for Trustee.

Jerome Romero, Jones Waldo Holbrook & McDonough, Salt Lake City, UT, for Blue Cross.

## MEMORANDUM OPINION AND ORDER DENYING CLAIM FOR ADMINISTRATIVE PRIORITY

GLEN E. CLARK, Chief Judge.

### APPEARANCES

The Motion of Regence Blue Cross Blue Shield of Utah ("Blue Cross") for Allowance of Administrative Expense came before the Court on June 30, 1998. Jerome Romero appeared on behalf of Blue Cross; Michael N. Zundel appeared on behalf of the trustee.

### BACKGROUND

The debtor, Eleva, Inc. ("Eleva"), provided subsidized health insurance benefits to its employees through a group health care agreement with Blue Cross. Eleva employees, who subscribed to the subsidized health insurance program, contributed their share of the insurance cost by having that portion withheld from their paychecks.

Each month Blue Cross would send an invoice to Eleva for the coming month's insurance cost. Invoices from Blue Cross billed for coverage from the first day of the month to the first day of the following month.

Each invoice was due, on receipt, the first day of the billing month.

On March 1, 1997, Blue Cross sent an invoice to Eleva in the amount of $19,794.94 for the billing period March 1, 1997, to April 1, 1997. The March 1, 1997, invoice was never paid by Eleva.

On March 17, 1997, Eleva filed bankruptcy under Chapter 11. After filing, Eleva continued to operate as a business and continued to withhold payroll funds for insurance coverage.

On April 1, 1997, Blue Cross sent an invoice to Eleva in the amount of $17,614.71 for the billing period April 1, 1997, to May 1, 1997. That invoice was never paid. On April 14, 1997, Blue Cross discontinued providing insurance coverage.

The debtor's bankruptcy proceeding was converted to a case under Chapter 7 on April 30, 1997. Kenneth A. Rushton was appointed as the Chapter 7 Trustee ("trustee").

On March 10, 1998, Blue Cross filed a motion seeking allowance of its claim in the amount of $17,747.01 plus attorney fees ($500.00) as an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A). The basis for the claim was that the post-petition insurance coverage provided to the employees of Eleva from March 17, 1997, to April 14, 1997, was executory in nature, the insurance coverage was beneficial to Eleva, and it arose out of a transaction between Blue Cross and Eleva. Blue Cross argues that Eleva's conduct in continuing to withhold insurance premiums from its employees' wages and continuing the insurance coverage with Blue Cross, rather than simply canceling the policy, amounts to a post-petition transaction between the debtor-in-possession and Blue Cross thereby creating the claim.

Both parties agree that insurance coverage was provided to the employees of Eleva through April 14, 1997, only because of the terms of Utah Code Annotated § 31A–23–311(3) [1] which requires, under certain circum-

---

1. Utah Code Annotated 31A–23–311(3) provides in relevant part:
(3) In the case of an employer who has received the premium by deducting all or part of it from the wages or salaries of the certificate holders, the insurer may terminate its liability by giving certificate holders reasonable notice of coverage termination. The liability of the insurer for the losses covered by the insurance terminates at the later of:

stances, that coverage be extended for a period of 45 days from the last date for which a premium was received. April 14, 1997, is 45 days from February 28, 1997, which is the last date for which a premium was received by Blue Cross.

The trustee argues that the post-petition insurance coverage was not the result of any post-petition transaction between Eleva and Blue Cross, the insurance coverage benefited the employees of Eleva, not Eleva, and given the facts of the case, Blue Cross was required by law to provide insurance coverage to the employees of Eleva through April 14, 1997. It follows, therefore, that since Blue Cross was bound to provide insurance coverage through April 14, 1997, the contract is not executory.

### ANALYSIS

■ The party claiming entitlement to administrative expense priority has the burden of proof. *In re Fullmer*, 962 F.2d 1463, 1467 (10th Cir.1992). "To be deemed an administrative expense, the expense must: (1) arise out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession; and (2) benefit the debtor-in-possession in the operation of the business." *In re Mid Region Petroleum Inc.*, 1 F.3d 1130, 1133 (10th Cir.1993). A debt is not entitled to priority simply because the right to payment arises after the debtor-in-possession has begun managing the estate.

■ The first prong of this test requires that the expense arise out of a transaction between the creditor and the debtor-in-possession. Here, Blue Cross can point to no explicit post-petition transaction between Blue Cross and Eleva[2]. Rather, Blue Cross

cites *In re MEI Diversified, Inc.*, 106 F.3d 829, 832 (8th Cir.1997), for the proposition that the failure of a debtor-in-possession to terminate post-petition insurance coverage is tantamount to a "positive post-petition act." In *Diversified*, 106 F.3d 829, the debtor had contracted pre-petition with CNA Insurance Company ("CNA") to provide workers' compensation insurance. Upon filing bankruptcy, the debtor took no action to induce CNA to continue coverage nor did the debtor reject or cancel the policy. The Eighth Circuit reasoned that because the debtor did nothing, when it could have rejected or canceled the policy, it obtained insurance essential to its post-petition operations and, under those circumstances, CNA was entitled to administrative expense priority. Blue Cross argues Eleva's failure to reject or cancel its coverage is a post-petition act that satisfies the transaction requirement established by the Tenth Circuit. However, the Tenth Circuit in *In re Amarex, Inc.*, 853 F.2d 1526, 1530 (1988) (quoting *Matter of Jartran*, 732 F.2d 584, 587 (7th Cir.1984)), appears to look for more than a mere failure to act, it requires inducement, stating that "[t]o serve the policy of the priority, inducement of the creditor's performance by the debtor-in-possession is crucial to a claim for administrative priority in the context of goods or services to the debtor." The Eighth Circuit in *Diversified*, 106 F.3d 829, while acknowledging that CNA was required by state law to provide post-petition coverage to the employees of Diversified, fails to deal with the issue of what induced CNA to provide the post-petition coverage. Like Eleva, Diversified did not petition CNA to extend coverage post-petition. In both cases, the insurance companies were required by state law to extend

(a) the last day of the coverage period for which premium has been withheld by the employer; or
(b) 15 days after the date the insurer mails actual notice to the certificate holder that coverage has terminated, but in the event the insurer fails to provide actual notice as required by this subsection, then the liability of the insurer for losses described in Subsection (1) shall terminate 45 days from the last date for which premium was received ....

**2.** Blue Cross asserts that Eleva's post-petition deduction of a portion of the premium from its

employees' wages makes Eleva a collection agent of sorts for Blue Cross and the post-petition deduction of wages is a transaction out of which Blue Cross's expense claim arises. However, because Eleva deducted a portion of the premium from its employees' wages prepetition, Blue Cross was already bound by the provisions of U.C.A. § 31–23–311 on the petition date, and was bound whether or not Eleva continued to withhold premiums from its employees' paychecks post-petition. The fact that Eleva deducted post-petition insurance premiums from its employees' wages is irrelevant.

**126**

post-petition coverage. If they failed to do so, they would be prohibited from doing business in the affected states. The debtors took no action to continue the post-petition coverage. Rather, the insurance companies' need to comply with state law and their desire to continue doing business in that state induced the coverage.

 Eleva could not have "simply" canceled the coverage as argued by Blue Cross. U.C.A. § 31A–23–311(4)(b) provides that coverage can be terminated by the employer only if the employees be given notice of the termination. This notice requirement is no more or less than the notice requirement described under § 31A–23–311(3)(b) [3] which, if used by Blue Cross, would have eliminated or dramatically reduced the amount of post-petition insurance coverage it was required to provide. When asked by the Court why Blue Cross failed to exercise its right to terminate the insurance coverage in 15 days, as opposed to the 45 days, Blue Cross indicated that it viewed the task of sending notice of termination to the employees as "not real practical." (Transcript of hearing dated June 30, 1998, p. 11–12). This is the same notice that Eleva would have had to send to cancel the insurance coverage. To require Eleva to perform the same task, in order to avoid the assessment of an administrative expense, runs afoul of one of the goals of Chapter 11, which is to keep administrative costs to a minimum in order to preserve the debtor's scarce resources and thus encourage rehabilitation. *Mid Region Petroleum*, 1 F.3d at 1134. "Statutory priorities are to be narrowly construed because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors." *Amarex*, 853 F.2d at 1530. Eleva did not induce Blue Cross to provide post-petition coverage. At most, Eleva decided to not engage in a task that Blue Cross itself characterized as "not real practical." This is not inducement.

 The second prong requires that the expense benefit the debtor-in-possession in the operation of the business. In order to benefit the debtor-in-possession, the transaction must bestow some value or economic advantage upon the debtor-in-possession that it was not previously entitled to receive. At first blush, the post-petition insurance coverage provided by Blue Cross appears to qualify as such a benefit. However, the employees of Eleva were entitled by law, absent notice of termination, to receive insurance coverage through April 14, 1997. This is an obligation that Blue Cross faced on the petition date and is a benefit to which Eleva was entitled on the petition date. By failing to cancel the insurance coverage, Eleva did not improve its economic position or enlarge its right to any benefit. It simply preserved its preexisting right. Cancellation of the policy by Eleva would only have diminished the benefits to which Eleva was entitled. The acceptance or even enforcement of a post-petition benefit to which a debtor-in-possession is entitled on the petition date does not give rise to an administrative priority claim. Accordingly, it is hereby

ORDERED that the claim of Blue Cross for administrative priority is DENIED.

---

3. Although Blue Cross asserts that it was bound to provide continued coverage for a period of 45 days from February 28, 1997, U.C.A. § 31A–23–311(3)(b) provides that the insurance coverage may be terminated 15 days after the date the insurer mails actual notice to the certificate holder that coverage has terminated. It is Blue Cross's belief that this would require notice to Eleva and the Eleva employees who hold contracts with Blue Cross.